UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
**TAKISHA PEARSON**,                                      :

                           Plaintiff,      :

           – against –      :   **MEMORANDUM DECISION AND ORDER**

**COMMISSIONER OF SOCIAL SECURITY**,      :   20-CV-3030 (AMD)

                   Defendant.      :
------------------------------------------------------------- X
**ANN M. DONNELLY**, United States District Judge:

The plaintiff challenges the Social Security Commissioner's decision that she was not disabled for the purposes of receiving benefits under Titles II and XVI of the Social Security Act. For the reasons explained below, I grant the plaintiff's motion for judgment on the pleadings, deny the Commissioner's cross-motion, and remand the case for further proceedings.

## BACKGROUND

On May 3, 2017, the plaintiff applied for disability insurance benefits and supplemental security income, alleging disability because of herniated and bulging discs, depression, carpal tunnel syndrome, a dislocated right knee, blood clots, and anxiety, with an onset date of December 13, 2013. (Tr. 87, 188, 198-208, 224.)

After her claims were denied, the plaintiff requested a hearing in front of an Administrative Law Judge ("ALJ"). (Tr. 71-88, 94-105.) ALJ Melissa Hammock held a hearing at which a vocational expert and the plaintiff, who was represented by counsel, testified. (Tr. 46-70.) In a March 6, 2019 decision, the ALJ denied the plaintiff's claim for benefits (Tr. 24-39), using the Commissioner's five-step sequential evaluation process (Tr. 30-39).

After determining at step one that the plaintiff was not engaged in substantial gainful activity, the ALJ found at step two that while the plaintiff's stenosis, right knee impairment and

mental impairment were "nonsevere" (Tr. 30-32), the plaintiff had the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine with radiculopathy; fibromyalgia; polyneuropathy; migraines; bilateral ulnar nerve neuropathy consistent with cubital tunnel syndrome; and right median nerve neuropathy consistent with carpal tunnel syndrome (Tr. 30).  At step three, the ALJ determined that none of these impairments met or equaled an applicable listing.  (Tr. 32-33.)  The ALJ concluded that the plaintiff had the residual functional capacity ("RFC") to perform "sedentary exertional level" work, "wherein she can sit for 30 minutes at a time before she needs to stand for 10 minutes, with no loss in productivity."  (Tr. 33-37.)  The ALJ also concluded that the plaintiff could "lift, carry, push, or pull up to 10 pounds frequently, stand and/or walk for two hours, and sit for six hours in an eight-hour work day," but could not "crawl, reach overhead with upper extremity," "climb ladders, ropes or scaffolds," and could not be exposed to "vibration, unprotected heights or moving mechanical parts."  (*Id.*)  At the fifth and final step, the ALJ found that there were jobs in the national economy that the plaintiff could perform.  (Tr. 38-39.)

On May 8, 2020, the Appeals Council denied the plaintiff's request for review.  (Tr. 1-4.) The plaintiff filed this action on July 4, 2020 (ECF No. 1), and both parties moved for judgment on the pleadings (ECF Nos. 19, 22).

## STANDARD OF REVIEW

A district court reviewing the Commissioner's final decision is limited to determining "whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)).  The district court must uphold the Commissioner's factual findings if they are supported by substantial evidence.  42

U.S.C. § 405(g).  This is true "even if there also is substantial evidence for the plaintiff's

position." *Cerqueira v. Colvin*, No. 14-CV-1134, 2015 WL 4656626, at *11 (E.D.N.Y. Aug. 5,

2015) (internal quotation marks omitted).  "Substantial evidence is 'more than a mere scintilla'

and 'means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Richardson v. Perales*,

402 U.S. 389, 401 (1971)).  "To determine on appeal whether an ALJ's findings are supported by

substantial evidence, a reviewing court considers the whole record, examining the evidence from

both sides, because an analysis of the substantiality of the evidence must also include that which

detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  Nevertheless,

the district judge may not "substitute [her] own judgment for that of the [ALJ]," even if she

would have made a different decision.  *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991).

While "factual findings by the Commissioner are 'binding' when 'supported by

substantial evidence,'" the Court will not defer to the ALJ's determination "[w]here an error of

law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377

F.3d 183, 188-89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984))

(alteration in original).  Therefore, even if the Commissioner's decision is supported by

substantial evidence, remand is warranted if "the ALJ has applied an improper legal standard" or

if "there are gaps in the administrative record." *Price v. Berryhill*, 298 F. Supp. 3d 517, 525

(E.D.N.Y. 2018) (quoting *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999)) (internal

quotation marks omitted).

## DISCUSSION

The plaintiff claims that the ALJ's decision was not supported by substantial evidence.

(ECF No. 19 at 5.)  Specifically, she challenges the ALJ's conclusion that the plaintiff's

impairments or combination of impairments did not meet or equal the severity of a listed impairment.  (ECF No. 19 at 15.)  She also claims that the ALJ should have supplemented the record with additional evidence from her treating and examining doctors (ECF No. 19 at 16), and that her failure to consider Dr. Yakutilov's and Dr. Haas's opinions—the only medical opinions in the record—was error (ECF No. 19 at 11).  Finally, the plaintiff challenges the ALJ's RFC analysis, faulting the ALJ's evaluation of the plaintiff's daily activities and symptoms, as well as the ALJ's failure to address the plaintiff's "nonsevere" impairments.  (ECF No. 19 at 11-13, 15.)  The defendant maintains that the ALJ's decision was supported by substantial evidence and is free of legal error.  (ECF No. 22-1 at 5.)

## I.     The ALJ's Evaluation of Impairments

The plaintiff argues that the ALJ did not acknowledge or appear to consider the limitations associated with the plaintiff's daily activities (ECF No. 19 at 11), and did not consider whether the plaintiff's impairments in combination met or medically equals the severity of a listed impairment (ECF No. 19 at 15).

### A.     The ALJ's Analysis of Individual Impairments

At step three of the five-step sequential evaluation process, the ALJ determined that the plaintiff's "upper extremity impairment does not rise to the level of severity contemplated in listing 1.02," because "[the plaintiff] can engage in activities that require fine and gross upper extremity manipulative capabilities, such as caring for her children, dressing, caring for her hair, preparing meals, and going shopping."  (Tr. 32, 376-384.)  Using similar reasoning, the ALJ determined that the plaintiff's polyneuropathy did not meet "listing 11.14."  (*Id.*)

Although the ALJ cited the plaintiff's daily activities in making her decision, she did not appear to consider the plaintiff's limitations in various aspects of her daily living.  (*See id.*; Tr.

247.)  For example, the ALJ cited the plaintiff's ability to shop, but did not also include the plaintiff's statement that she could do so for only 20 minutes.  (Tr. 380.)  Similarly, the ALJ observed that the plaintiff could care for her six children and prepare meals, but did not also mention that the plaintiff's oldest child and mother-in-law help her with the children (Tr. 378), and that her mother-in-law helps her prepare meals (Tr. 379).  Nor did the ALJ refer to the "report of contact" from Disability Determination Services ("DDS"), which reported a conversation between the plaintiff and a DDS representative in which the plaintiff said that she was "used to being independent and has six kids so it bothers her that physically she can't really take care of them."  (Tr. 247.)

 "[C]rucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citation omitted); *see also Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2021 WL 363682, at *7 (S.D.N.Y. Jan. 29, 2021).  The ALJ's failure to discuss the plaintiff's limitations was error.  On remand, the ALJ should consider the plaintiff's various limitations in evaluating whether the plaintiff's carpal tunnel and cubital tunnel syndrome or polyneuropathy meets or medically equals the severity of a listed impairment.

### B.  The ALJ's Analysis of the Plaintiff's Impairments

At step three, the ALJ also neglected to examine whether the combination of the plaintiff's impairments—severe and non-severe—would meet or medically equal the severity of a listed impairment.  (*See* Tr. 32-33); *Price*, 298 F. Supp. 3d 517, 525 (stating "the third step is to determine whether the impairment or combination of impairments meets or equals one of the listings in Appendix 1 of the regulations") (citing 20 C.F.R. § 404.1520(a)(4)(iii)).  The ALJ was

required to evaluate the plaintiff's impairments in combination throughout the sequential evaluation.  (ECF No. 19 at 15); 20 C.F.R. § 404.1523(c).

The ALJ appears to have evaluated each impairment individually, without discussing them in combination.  (*See* Tr. 32-33.)  On remand, the ALJ should consider and discuss the combined effect of all impairments with sufficient specificity.  *See* 20 C.F.R. § 404.1523(c); *Ferraris*, 728 F.2d 582, 587.

## II.     The ALJ's RFC Analysis

In making an RFC determination, the ALJ must consider objective medical facts, and the diagnoses and medical opinions based on those facts.  *See* 20 C.F.R. § 404.1545.  Additionally, the ALJ must consider the plaintiff's subjective symptoms, including pain and other limitations. *Id.*

### A.  Daily Activities

In her RFC analysis, the ALJ explained that "[i]n assigning a sedentary exertional limitation, I considered medical evidence from June 2018 noting that claimant had six children and was busy with house activities."  (Tr. 35.)  As explained above, the ALJ did not refer to the limitations that the plaintiff had in her daily life.  (Tr. 33-37.)  "[C]rucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence."  *Ferraris*, 728 F.2d 582, 587; *see also Cuevas*, 2021 WL 363682, at \*7.  Therefore, if an RFC determination is necessary on remand, the ALJ must explain the extent to which the limitations in the plaintiff's daily activities factor into her RFC determination.

### B.  Medical Opinions in the Record

Dr. Rafael Yakutilov, M.D., the plaintiff's treating neurologist, opined that the plaintiff "constantly experiences pain or other symptoms sufficient to interfere with the attention and concentration required for simple work tasks," and as a consequence, she would miss four or more days of work each month.  (Tr. 36, 626-630.)  Additionally, Dr. Yakutilov opined that the plaintiff was "incapable of performing even low stress jobs," "could walk one block without rest[ing] or severe pain," could "sit for [ten] minutes at a time for a total of less than two hours in an eight-hour workday," could "stand for 20 minutes at a time for a total of less than two hours in an eight-hour workday," "could rarely lift or carry less than [ten] pounds" and could rarely perform pivotal movements with her neck.  (*Id.*)  Dr. Yakutilov also found that the plaintiff could "never crouch, squat, climb stairs, or climb ladders," and "had significant limitations with reaching, handling, or fingering."  (*Id.*)

The only other medical opinion in the record is from the plaintiff's chiropractor, Dr. Timothy M. Haas, who opined that the plaintiff would miss only one day of work a month.  (Tr. 36, 621-625.)  Dr. Haas concluded that the plaintiff's "experience of pain or other symptoms was occasionally enough to interfere with the attention and concentration required for simple work tasks," and she could perform low stress jobs.  (*Id.*)  He also opined that the plaintiff "could walk two blocks without rest or severe pain," could "sit for 30 minutes at a time for a total of less than two hours in an eight-hour workday" and could "stand for 10 minutes at a time for a total of less than two hours in an eight-hour workday."  (*Id.*)  Furthermore, Dr. Haas opined that the plaintiff "could frequently lift or carry less than 10 pounds," could "rarely lift or carry up to 20 pounds," could "occasionally stoop or twist" and could "rarely crouch, squat, climb stairs, or climb

ladders." (*Id.*)  Dr. Haas did not believe that the plaintiff had significant limitations with reaching, handling, or fingering.  (*Id.*)

The ALJ compared the doctors' findings with each other, as well as to the "objective medical evidence." (Tr. 36-37.)  She concluded that the doctors' disagreements—about how far the plaintiff could walk, how long she could sit, and whether she could work in low stress jobs—made both opinions less persuasive.  (Tr. 36; *see also* Tr. 621-630.)  The ALJ also considered the doctors' disagreement about the number of days the plaintiff would need to miss work each month, as well as her limitations in manipulating or reaching.  (*Id.*)

The ALJ explained that "in light of the inconsistency between the only two medical opinions of record and their questionable relationship to the evidence, to make the residual functional capacity finding, I drew logical ties between the objective findings from the relevant period." (Tr. 37.)  In other words, the ALJ undertook her own review of the raw medical data, examination results and treatment notes in the record, without relying on either medical opinion. (*See* Tr. 33-37.)[1]

While "'an RFC determination is an issue reserved for the Commissioner, the ALJ is a layperson, and as such is not qualified to assess a claimant's RFC on the basis of bare medical findings.'" *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313, 2021 WL 706645, at * 4 (N.D.N.Y. Feb. 22, 2021) (quoting *Anderson v. Comm'r of Soc. Sec.*, No. 19-CV-464, 2020 WL 5593799, at *3 (W.D.N.Y. Sept. 18, 2020)).  Moreover, an ALJ's RFC determination must be

---

1 For example, the ALJ stated "[i]n sum, the above residual functional capacity assessment is supported by the radiographic evidence showing degenerative changes at all three levels of the claimant's spine, the electrodiagnostic evidence showing upper and lower extremity radiculopathy, and the diagnosis of fibromyalgia with 18 widespread tender points. . . . The same evidence, which demonstrates the claimant's cervical spine affects her more than her lumbar spine, supports the postural and environmental limitations assigned, as the upper extremity weight bearing required for crawling, reaching overhead, and climbing ladders, ropes or scaffolds would be incompatible with her paraspinal issues." (Tr. 37.)

supported by a medical opinion in the record at that time.  *Timothy S. v. Comm'r of Soc. Sec.*, No. 19-CV-1141, 2021 WL 661392, at * 3 (W.D.N.Y. Feb. 19, 2021).  "Because the ALJ rejected the only medical opinions related to [the plaintiff's functional limitations], the ALJ's evaluation of [her impairments] and the functional limitations resulting therefrom was the product of her lay judgment."  *Anderson*, 2020 WL 5593799, at *4; (*see also* Tr. 33-37.)

There is no medical opinion or functional assessment that supports the ALJ's RFC determination.  If an RFC assessment is necessary on remand, the ALJ's determination must be supported by a medical opinion in the record at that time.

Moreover, the ALJ did not address the relevant factors in evaluating whether the doctors' opinions were persuasive.  Because the plaintiff's claim was filed after March 27, 2017, 20 C.F.R. § 404.1520c governs this case.  (Tr. 87 (noting the filing date as May 3, 2017).)  Pursuant to that rule, ALJs are no longer required to give controlling weight to the opinions of treating physicians.

Under the new rule, the ALJ considers five factors to determine whether a medical opinion is persuasive: (1) supportability; (2) consistency; (3) the source's relationship with the patient; (4) the source's specialty; and (5) "other factors that tend to support or contradict" the opinion.  20 C.F.R. § 404.1520c(c)(1)-(c)(5).  The most important factors are "supportability" and "consistency."  20 C.F.R. § 404.1520c(b)(2).  While the ALJ is not required to explain her consideration of all five factors, she must discuss these two.  *Id.*

"The 'supportability' factor asks how well a medical source supported their opinion(s) with 'objective medical evidence' and 'supporting explanations.'"  *Cuevas*, 2021 WL 363682, at *14 (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).  The ALJ did not discuss, as the new regulations require, the objective medical evidence upon which Dr. Yakutilov and Dr. Haas

9

relied to support their respective opinions.  The ALJ applied the "consistency" factor, and considered whether the objective medical evidence supported the medical opinions, and compared the medical opinions.  (*See* Tr. 36-37.)  She did not, however, address the "supportability" factor.  On remand, the ALJ should examine whether the treating doctors' findings were supported by the objective medical evidence.

### C.  The Plaintiff's Symptoms

The ALJ stated that in making her RFC finding she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  (Tr. 33.)  In addition, the ALJ noted that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  However, the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 34.)  The ALJ found that there was "insufficient objective justification for [the plaintiff's] testimony that she could only sit for five to 10 minutes and she needs to lie down for half the day.  A caveat that the claimant can sit for 30 minutes before she needs to stand for 10 minutes adequately addresses the physical findings and radiographic evidence."  (Tr. 35.)  The ALJ did not base her finding on a medical opinion.  (*See Id.*) Moreover, although she found that "the [plaintiff's] medically determinable impairments could reasonably be expected to cause [her] alleged symptoms" (Tr. 34), the ALJ did not explain the extent to which she considered the plaintiff's subjective pain in her RFC determination (*see* Tr. 33-37).

Although the ALJ is not required to accept a claimant's subjective complaints without question (ECF No. 22-1 at 22 (citing *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)), she

cannot "reject [a claimant's] statements about the intensity and persistence of [their] pain or other symptoms or about the effect [their] symptoms have on [their] ability to work solely because the available objective medical evidence does not substantiate [their claims]," 20 C.F.R. § 404.1529.

### D.  Non-Severe Impairments

Section 404.1545 provides that "when [a claimant has] severe impairment(s), but [her] symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of this subpart, [the ALJ must] consider the limiting effects of all impairment(s), even those that are not severe, in determining [the plaintiff's] residual functional capacity." 20 C.F.R. § 404.1545.  Therefore, even though the ALJ found that the plaintiff's stenosis, knee pain and mental impairments were "nonsevere," she should have considered them in her RFC analysis.  *Id.*  If an RFC assessment is necessary on remand, the ALJ must consider the limiting effects of all impairments, including those that are not severe.

### III.    The ALJ's Duty to Supplement

The ALJ has an "affirmative duty to develop the record on behalf of claimants, including those represented by counsel."  *Cuevas*, 2021 WL 363682, at *7; *see also* 20 C.F.R. § 404.1520b(b)(2).  20 C.F.R. § 404.1520b(b)(2) provides that "depend[ing] on the nature of [an] inconsistency or insufficiency, [the ALJ] will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (b)(2)(i) through (b)(2)(iv) of this section."  Paragraphs (b)(2)(i) through (b)(2)(iv) list several ways the ALJ can reconcile an insufficient or inconsistent case record, one of which is to recontact the claimant's treating source.  *Id.*  Therefore, the ALJ should resolve all inconsistencies and insufficiencies noted in

this opinion and in her initial decision using whichever mechanisms relevant authority supports and that she deems appropriate.

## CONCLUSION

The plaintiff's motion for judgment on the pleadings is granted.  The Commissioner's motion for judgment on the pleadings is denied.  The case is remanded for further proceedings consistent with this opinion.


**SO ORDERED.**

    s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
     August 3, 2021